Andrew HEDGEPETH, Celia Burson, David McCleary, and Gaynell Metts, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

State of TENNESSEE, State of Tennessee Department of Safety, and Mike Green, in his official capacity as Commissioner of the Tennessee Department of Safety, Defendants.

No. 97–2825–TUV.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 29, 1998.

Alex Saharovich, Marc A. Sorin, Nahon & Saharovich, Michael F. Rafferty, Jonathan E. Scharff, Harris Shelton Dunlap & Cobb, Memphis, TN, for Plaintiffs.

S. Elizabeth Martin, Mary M. Collier, Office of the Attorney General, Civil Litigation and State Services, Nashville, TN, for Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

TURNER, District Judge.

Plaintiffs, handicapped individuals, allege that defendants' collecting fees for issuing handicapped parking placards violates the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Presently before the court is defendants' motion to dismiss which challenges whether this court has subject matter jurisdiction and whether the plaintiffs' claims are barred by the applicable statute of limitations.

### I. *Standards of Review*

#### A. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

■ When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing the existence of the court's jurisdiction. *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986). Furthermore, where defendants factually attack whether a court has subject matter jurisdiction as averred in a com-

plaint, "no presumptive truthfulness applies to the [plaintiff's] factual allegations." *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). Instead, factual disputes should be decided by the court based on the evidence before it. *Id.*[1]

#### B. *Motion to Dismiss for Failure to State a Claim*

■ When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all factual allegations of the plaintiff are to be believed and the claim must not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his allegations which would entitle him to relief. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b).

#### C. *Summary Judgment Standard*[2]

■ The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

---

1. Should facts critical to jurisdiction be in dispute, as ofttimes they are, the court must make appropriate inquiry, and must satisfy itself on authority to entertain the case. The court has considerable leeway in devising procedures in that direction, and may resort to written or live evidence submitted in connection with the motion. The nonmoving party must, however, be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.

*Rogers,* 798 F.2d at 918 (citation omitted).

2. Both plaintiffs and defendants rely on deposition testimony in arguing whether the plaintiffs' claims are time-barred, and the court has decided to consider this evidence. Accordingly, conversion of the Rule 12(b)(6) motion to dismiss into one for summary judgment is proper. Fed. R.Civ.P. 12(b).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed. R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. *Background*

Plaintiffs are disabled Tennessee residents who have been issued handicapped parking placards by the defendants, which afford them certain parking privileges. Plaintiffs challenge defendants' practice of charging a $20.50 assessment for the original issue of a placard, and a $3.00 bi-annual renewal fee, as violating the ADA. More specifically, plaintiffs contend that by charging fees for the issuance of a placard, defendants have made the equal access mandated by the ADA contingent upon the payment of a surcharge, which violates the ADA. Plaintiffs have brought their action as a class action, asserting that the class consists of all purchasers of placards or renewals since July 26, 1992.

The State of Tennessee is named as a defendant responsible for the enforcement of Tennessee Code Annotated § 55–21–103, which provides parking placards to individuals with disabilities. The State of Tennessee Department of Safety is named as a defendant because it is the agency responsible for administering the parking placard program. Mike Green is named as a defendant in his official capacity because he is the Commissioner of the Department of Safety, responsible for implementing the parking placard program.

Plaintiffs seek a judgment declaring it unlawful for defendants to require fee payments for handicapped placards and an injunction prohibiting defendants from requiring further fee payments. Plaintiffs also seek restitution of all fees paid by the class for parking placards since July 26, 1992, and attorneys' fees and costs.

## III. *Subject Matter Jurisdiction*

Defendants contend this court lacks subject matter jurisdiction because (a) the Tax Injunction Act bars plaintiffs' claim in this forum, and/or (b) the defendants are immune from suit under the Eleventh Amendment.

### A. *Tax Injunction Act*

■ "The Tax Injunction Act is an expression of congressional purpose to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987). The Federal Tax Injunction Act ("TIA") provides that:

> [t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The TIA applies not only to injunctive relief, but to declaratory relief, *Arkansas v. Farm Credit Servs.,* 520 U.S. 821, 117 S.Ct. 1776, 1779, 138 L.Ed.2d 34 (1997), and to monetary relief, *Cumberland Farms, Inc. v. Tax Assessor,* 116 F.3d 943, 945 (1st Cir.1997) (citing *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995)). Thus, if the TIA is applicable here, this court will be without authority to afford any relief requested by plaintiffs.

Plaintiffs assert that the TIA does not apply in this case because the fee paid for handicapped placards is not a tax, and/or there is no plain, speedy, and efficient remedy to be had in the Tennessee state courts.

### 1. *Tax Under the TIA*

■ The definition of the term "tax" as used in the TIA is a question of federal law. *Wright,* 835 F.2d at 144. In making a determination, the court must determine "whether the assessment in question is for revenue raising purposes or merely a regulatory or

punitive levy in the nature of a privilege fee." *Id.* at 144.

 The central inquiry in characterizing a charge is its ultimate use. *Marcus v. Kansas,* 980 F.Supp. 398, 402 (D.Kan.1997) (finding purpose of assessment for handicap placards was revenue raising and therefore was a tax under the TIA); *Lussier v. Florida,* 972 F.Supp. 1412, 1420–21 (M.D.Fla.1997) (same). Under Tennessee's statutory scheme, the $20.50 handicap placard fee and $3.00 renewal fee are apportioned into the state's highway fund, general fund, police pay supplement fund, and trooper safety fund. Tenn.Code Ann. §§ 55–4–111, 55–6–107, 55–4–103, 55–21–103. This reading of the Tennessee statutory scheme is in accord with the affidavits of Bill Hedge, Fiscal Services Director of the State of Tennessee Department of Safety, and Martha Irwin, Director of Title and Registration, State of Tennessee Department of Safety. Thus, the fees charged for the placards benefit the general public and resemble a revenue raising measure.[3]

 Plaintiffs rely on *Collins Holding Corp. v. Jasper County,* 123 F.3d 797, 800 (4th Cir.1997) for the proposition that when "the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it sounds like a fee." This court has already found that the assessment is not paid into a special fund to benefit regulated entities or to defray the cost of regulation. Standing alone, the fact that an assessment targets only a narrow class of people is not enough to characterize the assessment as a fee. *See Wright,* 835 F.2d at 144–45 (holding that fees charged to parolees were taxes for purposes of the TIA).

Accordingly, the court finds the ultimate purpose of Tennessee's assessment is general revenue raising, unrelated to the costs of administering the placard program, and it is therefore a tax under the TIA.

### 2. *Plain, Speedy, and Efficient Remedy*

Plaintiffs make two arguments to support their contention that they have no plain, speedy, and efficient remedy under Tennessee state law and that the TIA is therefore not applicable.

 First, plaintiffs argue, without pointing to any authority, that Congress granted exclusive jurisdiction to the federal courts to hear claims brought under the ADA. Plaintiffs then rely on *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 379 (6th Cir.1993), where the Sixth Circuit held a party does not have a plain, speedy, and efficient remedy as required by the TIA when Congress places exclusive jurisdiction over the plaintiffs' claims in federal court, because the grant of exclusive jurisdiction divests state courts of the ability to provide a remedy. Plaintiffs' argument is fatally flawed, however, because Congress has not granted exclusive jurisdiction over ADA claims to the federal courts. *Hapgood v. City of Warren,* 127 F.3d 490, 494 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998).[4]

---

**3.** If the state collected the fees to defray the cost of the handicap placard program, the fees look more like regulatory fees and less like a tax. *See, e.g., Thrope v. Ohio,* 19 F.Supp.2d 816, 822–23 (S.D.Ohio 1998) (finding charge for handicap placards was a regulatory fee where the $5 charge was used to defray the cost of the program). Plaintiffs contend that Tennessee's assessment "is paid into a special fund to benefit regulated entities or defray the cost of regulation." Plaintiffs have offered no evidence, however, to support this contention.

Based on the evidence before it, the court finds the funds collected for placards are not directly used to defray the cost of the program and are used for the general welfare of the citizens of the state. The court notes plaintiffs filed a supplemental brief based on what they asked for and found in discovery. The court therefore finds

plaintiffs have been "afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Rogers,* 798 F.2d at 918. Accordingly the court finds it unnecessary to hold an evidentiary hearing. *See Ohio Nat'l Life,* 922 F.2d at 327 (finding district court has considerable discretion on whether to hold evidentiary hearing, especially where non-movant had ample opportunity to present evidence).

**4.** The enforcement mechanism of Title II of the ADA, under which plaintiffs' claims are brought, is 42 U.S.C. § 12133. That enforcement section states that the procedures under Title II shall be the same as those provided in 29 U.S.C. § 794a. In turn, 29 U.S.C. § 794a(a)(1) provides that the procedures of 42 U.S.C. § 2000e–16 will apply, which states that the filing of civil actions is governed by 42 U.S.C. § 2000e–5. That section

Accordingly, this court finds federal courts do not have exclusive jurisdiction over a claim for relief under the ADA, and the reasoning of *Thiokol* is therefore inapposite.

Second, plaintiffs argue Tennessee state law does not provide them with a plain, speedy, and effective remedy. "[A] state-court remedy is plain, speedy, and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (internal quotations omitted).

Tennessee law directs that the Tennessee Claims Commission has exclusive jurisdiction over a claim "for the recovery of taxes collected or administered by the state." Tenn. Code Ann. § 9–8–307(a)(1)(O). The decision of the Claims Commission is appealable to the Tennessee courts. *See, e.g., Stewart Title Guar. Co. v. McReynolds*, 886 S.W.2d 233, 237–38 (Tenn.Ct.App.1994). Tennessee, however, has not declared itself subject to suit in all actions to recover taxes. Tennessee Code Annotated § 9–8–307(a)(1) sets out a list of several types of claims that may be brought before the Claims Commission, including a claim to recover taxes. Tennessee Code Annotated § 9–8–307(a)(2) then limits the type of claims that may be brought, providing that:

No item enumerated in this [subsection (a) which includes claims for the refund of taxes] shall be interpreted to allow any claim against the state on account of the acts or omissions of persons, partnerships, corporations or other entities licensed or regulated by agencies of the state, notwithstanding any negligence committed by the

state in the course of performing licensing or regulatory activities. No item enumerated in this [subsection (a) which includes claims for the refund of taxes] shall be interpreted to allow any claims against the state arising out of or resulting from:

(A) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization; . . .

Defendants contend that Tenn.Code Ann. § 9–8–307(a)(2) does not preclude plaintiffs from bringing their claim before the Commission because plaintiffs are not making a claim "on account of the acts or omissions of persons, partnerships, corporations or other entities licensed or regulated by agencies of the state." Defendants are correct that plaintiffs are not making a claim on account of the acts of any such entity. Thus, the first sentence of Tennessee Code Annotated § 9–8–307(a)(2) does not preclude plaintiffs from bringing their claim before the Commission.

The court also finds that the second sentence of Tenn.Code Ann. § 9–8–307(a)(2) does not preclude plaintiffs from bringing their claim before the Commission. Although the language of the second sentence of that section precludes claims against the state "arising out of or resulting from . . . [t]he issuance . . . of . . . any . . . license," plaintiffs are not seeking damages based on the issuance of a license. Instead, plaintiffs are claiming that the defendants' practice of charging handicapped individuals a fee for the license violates the ADA. Therefore, plaintiffs appear to have a "plain, speedy, and efficient remedy" through contesting this matter in front of the Commission.[5]

provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title." 42 U.S.C. § 2000e–5(f)(3). The Supreme Court has held that federal courts do not have exclusive jurisdiction over civil rights actions under 42 U.S.C. § 2000e–5(f)(3). *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823–26, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

5. The court reads Tenn.Code Ann. § 9–8–307(a)(2)(A) as retaining the state's immunity

from suit for actions arising out of the issuance of the license itself. This does not include actions pertaining to a fee requirement for obtaining such a license. The court is not aware of any state or federal court that has interpreted Tenn. Code Ann. § 9–8–307(a)(2)(A), but is aware that reasonable minds could differ as to how it should be interpreted. Should plaintiffs bring their claims in front of the Commission and the Commission subsequently refuses to hear them, the plaintiffs would be entitled to proceed in federal court to the extent this court was precluded from hearing those claims based on the TIA.

Since the court finds that the parking placard fees are a tax, the collection of which can be challenged in front of the Commission with subsequent appeal to the Tennessee state courts, the court finds it is without jurisdiction to entertain plaintiffs' claims.

## B. *The Eleventh Amendment*

Having found that the TIA precludes this court's jurisdiction over plaintiffs' claims, it is unnecessary to rule on defendants' argument that plaintiffs' claims against Tennessee are barred by the Eleventh Amendment. Nevertheless, the court will address defendants' assertion for purposes of appellate review.

 The Eleventh Amendment provides sovereign immunity to the states by denying federal courts jurisdiction to entertain a suit brought by an individual against a state. *Coger v. Board of Regents*, 154 F.3d 296, 300 (6th Cir.1998).[6] The protection of the Eleventh Amendment is not absolute, however, in that it may be abrogated by Congress. *Seminole Tribe v. Florida*, 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

 To properly abrogate the states' sovereign immunity, Congress (a) must unequivocally express an intent to abrogate Eleventh Amendment immunity and (b) must act pursuant to a valid exercise of power. *Id.* at 55, 116 S.Ct. 1114. The parties do not dispute that Congress, in enacting the ADA, unequivocally expressed its intent to abrogate Eleventh Amendment immunity.[7] The parties do dispute, however, whether Congress acted pursuant to a valid exercise of power.

The ADA expressly states that it was enacted pursuant to Congress' authority to enforce the Fourteenth Amendment and to regulate commerce. 42 U.S.C. § 12101(b)(4).[8] While the Supreme Court recently held that Congress' Commerce Clause powers are no longer a sufficient source of authority to abrogate states' Eleventh Amendment immunity, it also held that the Fourteenth Amendment remains as a sufficient source of power. *Seminole Tribe*, 517 U.S. at 59, 116 S.Ct. 1114.[9]

 Defendants argue that while the Fourteenth Amendment may be a source of abrogation power in certain cases, Congress exceeded this power by making the states subject to suit under the ADA. Defendants offer two separate lines of reasoning in arguing Congress exceeded the scope of its authority. Defendants first argue that disabled individuals do not constitute a suspect class entitled to increased protection under the Equal Protection Clause of the Fourteenth Amendment, and are thus not entitled to the heightened protection afforded by the ADA. The court finds this argument is without merit. In *Coger*, 154 F.3d at 305, the Sixth Circuit rejected the argument that the ADEA exceeded Congress' enforcement authority because age is not a suspect class. This court sees no reason why Congress' authority to affect classes of individuals not defined as suspect by the judiciary should change when confronted with the disabled instead of the elderly.

 Defendants also argue that since the accommodation provisions of the ADA are

6. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

7. The ADA provides that:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter [the ADA]. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as

such remedies are available for such a violation in an action against any public or private entity other than a State.
42 U.S.C. § 12202.

8. 42 U.S.C. § 12101(b)(4) provides that: "It is the purpose of this chapter ... to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

9. Section 5 of the Fourteenth Amendment provides: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

not limited to the prevention of discrimination and since they apply where no discrimination has been practiced, they permit a remedy where there is no injury and are therefore disproportionate.[10] The accommodation provisions, assert the defendants, give disabled individuals a preferential right under the ADA not previously recognized under the Equal Protection Clause, and thus exceed the scope of remedial legislation.[11]

In support of their arguments, defendants cite four district court opinions that have held Congress exceeded the scope of its authority in enacting the ADA. *See Garrett v. Board of Trustees*, 989 F.Supp. 1409 (N.D.Ala.1998); *Brown v. North Carolina Div. of Motor Vehicles*, 987 F.Supp. 451 (E.D.N.C.1997); *Nihiser v. Ohio Envtl. Protection Agency*, 979 F.Supp. 1168, 1174 (S.D.Ohio 1997); *Satterfield v. Tennessee*, No. 3:97–CV–0478 (E.D.Tenn. Mar. 31, 1998). *See also Kimel v. State of Florida Bd. of Regents*, 139 F.3d 1426, 1448–49 (11th Cir. 1998), *petition for cert. filed*, 67 U.S.L.W. 3348 (U.S. Nov. 16, 1998) (No. 98–791) (Cox, J., dissenting); *Coolbaugh v. Louisiana*, 136 F.3d 430, 439–42 (5th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998) (Smith, J., dissenting). The majority of courts, including an order out of this district and several others out of this circuit, have rejected these arguments, however, and have held that the ADA was properly enacted pursuant to Congress' enforcement powers under the Fourteenth Amendment. *See*

*e.g., Autio v. AFSCME, Local 3139*, 140 F.3d 802 (8th Cir.1998); *Kimel*, 139 F.3d at 1426; *Coolbaugh*, 136 F.3d at 430; *Clark v. California*, 123 F.3d 1267 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998); *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481 (7th Cir. 1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998); *Thrope v. State of Ohio*, 19 F.Supp.2d 816 (S.D.Ohio 1998); *Johnson v. State Tech. Center*, 24 F.Supp.2d 833 (W.D.Tenn.1998); *Williams v. Ohio Dep't of Mental Health*, 960 F.Supp. 1276 (S.D.Ohio 1997); *Niece v. Fitzner*, 941 F.Supp. 1497 (E.D.Mich.1996). This court has reviewed these decisions and the decisions relied on by the defendants and finds itself in agreement with the minority.

The court finds that the ADA's accommodation provisions give the disabled a preferential right to treatment where no such right exists under the Equal Protection Clause. While equal protection prohibits certain types of discrimination, the accommodation provisions of the ADA are not geared to prohibit or even remedy any prohibited form of discrimination. Instead, the accommodation provisions serve as massive entitlements that shift the cost of disabilities from the disabled to their employers by bestowing preferential rights on the disabled.

"Congress' power under § 5 . . . extends only to enforcing the provisions of the Fourteenth Amendment." *City of Boerne v.*

---

10. Under 42 U.S.C. § 12112(a)(5), the term discriminate includes:

(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

11. Plaintiffs bring their claim pursuant to 28 C.F.R. § 35.130(f), which provides:

A public entity may not place a surcharge on a particular individual with a disability or any

group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

Plaintiffs have not established that Tennessee's parking placard program is required by the ADA or regulations codified under the ADA. While the ADA clearly requires both public and private entities to provide parking privileges, it is unclear if it requires the State of Tennessee to regulate the provision of those parking privileges. However, the court will assume for purposes of this motion that the state's parking placard program is a required accommodation under the ADA, since defendants do not raise the issue, and plaintiffs will need to establish that the parking placard program is required by the ADA in order to succeed on the merits.

*Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997) (internal citations omitted). That Amendment, through the Equal Protection Clause, prohibits only "invidious discrimination." *Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). *See also Oregon v. Mitchell*, 400 U.S. 112, 126–27, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970) (finding Fourteenth Amendment does not permit Congress to prohibit all forms of discrimination). The Fourteenth Amendment requires only that citizens be afforded equal protection of the laws.[12] It makes no provision for special treatment.

In enacting the ADA, Congress included within the Act's definition of discrimination the failure to provide reasonable accommodations, and enforcement mechanisms of the Act prohibit conduct defined as discrimination. Congressional labels, however, do not magically turn non-discriminatory conduct into discrimination prohibited by the Equal Protection Clause.

> Legislation which alters the meaning of the [Equal Protection] Clause cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power "to enforce," not the power to determine what constitutes a constitutional violation.

*Boerne*, 117 S.Ct. at 2164 (alterations added). The central inquiry thus becomes whether the accommodation provisions serve to enforce the "equal protection of the laws" through prohibition of invidious discrimination. Clearly, they do not.

> The accommodation provisions are not limited to the prevention of discrimination, but rather apply where the sole impediment to the disabled individual's ability to perform the job is the individual's disability, and where the employer is innocent of any discriminatory animus. Since they permit a remedy even where there is no injury, they are disproportionate. The accommodation provisions will place a serious financial burden upon the states.

Reasonable accommodations include: 1) accommodations that are required to ensure equal opportunity in the application process; 2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and 3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities. 29 C.F.R. § 1630.2(*o*). This burden may include the cost of building modifications, the purchase of equipment or devices, and the hiring of qualified readers or interpreters. See 42 U.S.C. § 12111(9). Other examples of reasonable accommodations envisioned under the regulations include providing transportation, parking spaces, or a personal assistant.

The ADA and the Rehabilitation Act require only "reasonable" accommodations, and it is a defense to an action under those provisions if the accommodation would impose an undue hardship on the operation of the business of the state entity. 42 U.S.C. § 12112(a)(5). The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of factors such as the nature and cost of the accommodation needed, the financial resources available and the nature and circumstances of the state entity. 42 U.S.C. § 12111(10). Under this rather nebulous standard it is impossible to predict the magnitude of difficulty or expense which might be required of a state employer. Indeed, as a practical matter, it is questionable whether a state would be able to successfully plead undue hardship because the state could always raise taxes to finance any accommodation that it must make to disabled employees. *See Vande Zande v. Wisconsin Dept. of Admin.*, 44 F.3d 538, 542 (7th Cir.1995).

*Nihiser*, 979 F.Supp. at 1174–75.

While it is certainly true that the accommodation provisions will help provide equal access for the disabled where such access might not otherwise come to exist, that ac-

---

12. The Fourteenth Amendment provides, in pertinent part, "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." The Amendment makes no mention of special treatment.

cess is being provided at the expense of employers where access was not being denied for any discriminatory reason. To the extent the disabled do not have equal access and opportunities because of physical limitations, equal protection affords no special treatment that would authorize Congress to take remedial action. A statute that provides equal access and protection to the disabled where no discrimination has occurred in essence functions only to shift costs from the disabled to employers, and in this case, the state. To the extent the disabled do not have equal access and opportunities because they are suffering from discrimination, the ADA prohibits such discrimination elsewhere in the Act.[13] Equal protection mandates nothing further.

Thus, Congress did not have the authority to enact the accommodation provisions of the ADA, and Congress did not effectively abrogate the states' Eleventh Amendment sovereign immunity with respect to those provisions. Accordingly, the court finds plaintiffs are precluded from arguing their claims against Tennessee in this court.[14]

**13.** In addition to the failure to provide reasonable accommodations, the Act defines discrimination as:

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration—

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

. . .

## IV. *Failure to State a Claim*

Defendants argue that the appropriate statute of limitations for plaintiffs' claims is one year, and that some or all of plaintiffs' claims are barred as occurring outside that period. Defendants also argue that because plaintiffs have not alleged that they paid for placards within one year of filing the complaint, plaintiffs have not stated a claim upon which relief can be granted. Although the court has held it is without jurisdiction to hear plaintiffs' claims because of the TIA, it will address defendants' contentions for purposes of appellate review.

 The parties dispute what limitations period is applicable. The ADA does not contain a statute of limitations. In situations where a federal statute of limitations is not expressly applicable, the Supreme Court has "generally concluded that the courts apply the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158–59, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (footnote omitted).[15] The Sixth Circuit has con-

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

**14.** The court notes that several district court opinions concerning Congress' authority to abrogate the states' Eleventh Amendment immunity from suit under the ADA have been appealed to the Sixth Circuit. Plaintiffs may wish to file an expedited appeal and subsequent motion to consolidate their appeal.

**15.** Congress has now given us 28 U.S.C. § 1658, which provides:

cluded that the most closely analogous Tennessee statute to the ADA is Tennessee's personal injury statute. *Williams v. Treveca Nazarene College*, No. 97–5705, 1998 WL 553029, at *1 n. 2 (6th Cir. Aug.17, 1998).[16] Tennessee's personal injury statute provides that a civil action brought under the federal civil rights statutes shall be commenced within one year after the cause of action accrued. Tenn.Code Ann. § 28–3–104. Accordingly, this court finds that any of plaintiffs' claims that stem from purchasing placards more than one year before plaintiffs filed their complaint on September 12, 1997 are barred.[17]

Defendants contend that several of the plaintiffs' claims should be dismissed because they have not alleged that they were assessed fees for placards within the one year limitations period. Both parties refer to depositions taken by plaintiffs on this matter, and the court will therefore treat defendants' motion as a motion for summary judgment.

Defendants have produced evidence, through exhibits attached to Martha Irwin's deposition testimony, as to the following:

1. Plaintiff Hedgepeth applied for a placard and paid the $20.50 fee on or about June 10, 1996. There is no evidence of Hedgepeth having paid any renewal fee.

2. Plaintiff Metts applied for a placard and paid the $20.50 fee on or about September 28, 1989. On or about January 13, 1997, Metts applied for and received a replacement placard. It is unclear if Metts paid any fee for the replacement placard.

3. Plaintiff McCleary applied for a placard and paid the $20.50 fee on or about December 8, 1995. McCleary paid $2.00 for a replacement placard on or about December 5, 1996. McCleary paid $3.00 for a replacement placard on or about December 5, 1997.

4. Plaintiff Burson applied for a placard and paid the $20.50 fee on or about May 30, 1995, and again on or about September 1, 1995. There is no evidence of Burson having paid any renewal fee.

No other evidence has been submitted pertaining to when plaintiffs purchased placards. Under a one year limitations period, only McCleary's claim for $3.00 paid on or about December 5, 1997 survives defendants' motion.

■ Nevertheless, the court need not dismiss Hedgepeth, Metts and Burson from this action. In their complaint, plaintiffs asked for restitution, declaratory relief, and an injunction. Defendants have not argued that plaintiffs are without standing to ask for declaratory relief or an injunction. Thus, even though three of the plaintiffs may not have actionable claims for restitution, they may have standing to challenge the placard program. Accordingly, the court only dismisses plaintiffs' claims for restitution stemming from payments made to the state prior to September 12, 1996.

## V. Conclusion

Defendants' motion to dismiss for lack of subject matter jurisdiction is granted, as the court finds the Tax Injunction Act is a bar to its jurisdiction in this matter. Defendants' motion to dismiss for failure to state claim is granted to the extent plaintiffs' claims for

---

Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

Section 1658 was enacted on December 1, 1990. Although Title II of the ADA did not go into effect until 1992, it was enacted before § 1658. Thus, § 1658 does not provide the statute of limitations period. *See Doukas v. Metropolitan Life Ins. Co.*, 882 F.Supp. 1197, 1200 n. 4 (D.N.H.1995).

16. Although citation to unpublished Sixth Circuit precedent is disfavored, this case is referred to "because it establishes the law governing the present action and 'there is no published opinion that would serve as well.'" *Norton v. Parke*, 892 F.2d 476, 479 n. 7 (6th Cir.1989).

17. Plaintiffs contend that a one year limitation period in this case is unfair because the placards are good for two years, meaning an individual who paid for a placard would have his or her claim barred before the placard even expired.

Plaintiffs have not instructed this court exactly how this is unfair. Plaintiffs are claiming the assessment itself violates the ADA. They do not make any claim with respect to the use of the placards. This court does not believe the life of the placards bears any relationship to the period in which plaintiffs may sue for payment for the placards.

restitution are derived from payments for parking placards made prior to September 12, 1996.