ARKANSAS *v.* FARM CREDIT SERVICES OF
CENTRAL ARKANSAS ET AL.

No. 95–1918.   Argued April 21, 1997—Decided June 2, 1997

*Martha G. Hunt* argued the cause and filed briefs for petitioner.

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Dellinger, Assistant Attorney General Argrett, David C. Frederick,* and *David English Carmack.*

*Richard A. Hanson* argued the cause for respondents. With him on the brief were *Rufus E. Wolff, Kevin J. Feeley,* and *Michael L. Fayhee.*\*

JUSTICE KENNEDY delivered the opinion of the Court.

The Tax Injunction Act, 28 U. S. C. § 1341, restricts the power of federal district courts to prevent collection or enforcement of state taxes. It states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The statute, on its face, yields no exception to the jurisdictional bar save where the state remedy is wanting, but at least one other exception is established by our cases: The statute does not constrain the power of federal courts if the

\*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Betty D. Montgomery,* Attorney General of Ohio, *Jeffrey S. Sutton,* State Solicitor, *Robert C. Maier,* Assistant Attorney General, and *Steven M. Houron,* Acting Attorney General of New Hampshire, and by the Attorneys General for their respective jurisdictions as follows: *Bruce M. Botelho* of Alaska, *Daniel E. Lungren* of California, *Richard Blumenthal* of Connecticut, *Robert Butterworth* of Florida, *Michael J. Bowers* of Georgia, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *Jeffrey A. Modisett* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *J. Joseph Curran, Jr.,* of Maryland, *Scott Harshbarger* of Massachusetts, *Frank J. Kelley* of Michigan, *Jeremiah W. Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Tom Udall* of New Mexico, *Heidi Heitkamp* of North Dakota, *Mark W. Barnett* of South Dakota, *John Knox Walkup* of Tennessee, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, *James S. Gilmore III* of Virginia, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, and *James E. Doyle* of Wisconsin; for the American Bankers Association et al. by *John J. Gill III* and *Michael F. Crotty;* for the Multistate Tax Commission by *Paull Mines;* and for the National Association of Securities and Commercial Law Attorneys by *Kevin P. Roddy, G. Robert Blakey, Patrick E. Cafferty, Bryan L. Clobes,* and *Jonathan W. Cuneo.*

*Michael A. Cardozo* and *William L. Daly* filed a brief for the National Hockey League as *amicus curiae* urging affirmance.

United States sues to protect itself or its instrumentalities from state taxation. *Department of Employment* v. *United States,* 385 U. S. 355, 358 (1966). The present case explores the limits of this judicial exception. We decide here whether instrumentalities called Production Credit Associations, corporations chartered under federal law, are included within the exception when they sue by themselves. We hold they are not and so may not sue in federal court for an injunction against state taxation without the United States as co-plaintiff. The action must be dismissed, and, as a result, we do not reach the merits of the taxation dispute.

I

Production Credit Associations (PCA's) are corporations chartered by the Farm Credit Administration under the Farm Credit Act of 1971, 85 Stat. 583, as amended, 12 U. S. C. § 2001 *et seq.* A PCA is a corporate financial institution organized by 10 or more farmers and designed in large part to make loans to farmers. §§ 2071, 2075. PCA's have had differing tax-exempt status at different times, depending on whether the United States owned shares of their stock. See, *e. g.,* Farm Credit Act of 1933, 48 Stat. 267. In the period relevant here (when all PCA stock has been in private hands) they have been exempted, by explicit federal statute, from state taxes on their "notes, debentures, and other obligations." 12 U. S. C. § 2077.

Four PCA's, respondents here, brought suit in the United States District Court for the Eastern District of Arkansas claiming a tax exemption going beyond the express statutory language of § 2077. They assert immunity not only from the taxes described in the exemption statute we have quoted but also from Arkansas sales and income taxes. They seek a declaratory judgment and an injunction prohibiting the State from levying the taxes against them. The District Court granted the PCAs' motion for summary judgment, and a di-

vided panel of the United States Court of Appeals for the Eighth Circuit affirmed. 76 F. 3d 961 (1996).

Entitlement to the immunity is the underlying substantive issue, were we to reach it. The Tax Injunction Act, however, is an initial obstacle, for by its terms it would bar the relief the PCA's seek absent some exception. Seeking to overcome the bar under the Tax Injunction Act, the PCA's, first in the trial court and now here, contended that they are instrumentalities of the United States and so not subject to the provisions of the Act any more than the United States itself. The first point is correct: PCA's are instrumentalities of the United States because the statute which charters them says so. 12 U. S. C. §§ 2071(b)(7), 2077. The PCAs' argument about what follows from the designation, however, is incorrect. Instrumentalities of the United States, by virtue of that designation alone, do not have the same right as does the United States to avoid the prohibitions of the Tax Injunction Act.

An observation is proper respecting our consideration of this threshold question. Although the trial court addressed the meaning and operation of the Tax Injunction Act, in the Court of Appeals the whole question seemed to disappear, though it goes to the heart of judicial authority. Neither party, we are advised, addressed the point and neither opinion in the Court of Appeals, majority or dissent, mentions it. While the question of the Act's applicability was not raised in the State's petition for certiorari, the United States, in an *amicus* brief in support of the petition, called our attention to the point. In granting the petition, we asked the parties to address, in addition to the merits, whether the District Court should have dismissed the case for lack of subject-matter jurisdiction in light of the Act. 519 U. S. 805 (1997).

We have interpreted and applied the Tax Injunction Act as a "jurisdictional rule" and a "broad jurisdictional barrier." *Moe* v. *Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U. S. 463, 470 (1976). In dismissing

an action filed in a United States District Court to challenge state taxes we held that the Tax Injunction Act "deprived the District Court of jurisdiction to hear [the] challenges." *California* v. *Grace Brethren Church,* 457 U. S. 393, 396 (1982). Further, we found no jurisdiction even though the defendant State argued in favor of the federal court's jurisdiction. *Id.,* at 417, n. 38. In explaining our holding in *Grace Brethren* that declaratory relief is as violative of the Tax Injunction Act as an injunction itself, we said the Act was first and foremost a vehicle "'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'" *Id.,* at 408–409 (quoting *Rosewell* v. *LaSalle Nat. Bank,* 450 U. S. 503, 522 (1981)). These statements underscore the fundamental importance of the restrictions imposed by the Tax Injunction Act, restrictions we proceed to address.

II

The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary. The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation. In our constitutional system, the power of the State to tax is a concurrent power. "That the power of taxation is one of vital importance; that it is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments: are truths which have never been denied." *McCulloch* v. *Maryland,* 4 Wheat. 316, 425 (1819). The power to tax is basic to the power of the State to exist. *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444 (1940); *Rosewell, supra,* at 522.

Enactment of the Tax Injunction Act of 1937 reflects a congressional concern to confine federal-court intervention

in state government, a concern prominent after the Court's ruling in *Ex parte Young,* 209 U. S. 123 (1908), that the Eleventh Amendment is not in all cases a bar to federal-court interference with individual state officers alleged to have acted in violation of federal law. See *Rosewell, supra,* at 522, n. 28; *Perez* v. *Ledesma,* 401 U. S. 82, 104–115 (1971) (Brennan, J., concurring in part and dissenting in part). Given the systemic importance of the federal balance, and given the basic principle that statutory language is to be enforced according to its terms, federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text.

Where the Government of the United States is a party, of course, the other side of the federal balance must be considered. In our constitutional system the National Government has sovereign interests of its own. The necessity to respect the authority and prerogatives of the National Government underlies the now settled rule that the Tax Injunction Act is not a constraint on federal judicial power when the United States sues to protect itself and its instrumentalities from state taxation. The importance of allowing the United States to proceed in federal court to determine tax immunity questions is no doubt one reason why the exception was established with little discussion in *Department of Employment* v. *United States.* There the Court indicated the exception was consistent with a well-settled understanding that the Government is not bound by its own legislative restrictions on the exercise of remedial rights unless the intent to bind it is express. 385 U. S., at 358, n. 6 (citing *United States* v. *Livingston,* 179 F. Supp. 9, 12 (EDSC 1959) (three-judge District Court), aff'd, 364 U. S. 281 (1960); *United States* v. *Arlington County,* 326 F. 2d 929, 931 (CA4 1964); *United States* v. *Bureau of Revenue of N. M.,* 291 F. 2d 677, 679 (CA10 1961)). See also *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 239 (1874). The Court concluded, "in accord with an unbroken line of authority, and

convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." 385 U. S., at 358 (footnotes omitted). In all the District Court and Court of Appeals cases cited in *Department of Employment,* the United States was either the sole plaintiff or a co-plaintiff. The United States had joined as co-plaintiff with the Red Cross in *Department of Employment,* arguing that the Red Cross was a federal instrumentality immune from state taxation, and we held that the Tax Injunction Act did not deprive the District Court of jurisdiction to decide the merits and order relief.

We have not before now considered whether federal instrumentalities fall under the exception to the Tax Injunction Act when they sue without the United States as co-plaintiff. In *Moe* v. *Confederated Salish and Kootenai Tribes,* we reasoned that when the United States is not a party, the mere fact that a party challenging the tax has interests closely related to those of the Federal Government is not enough, in and of itself, to avoid the bar of the Act. We considered whether the Act barred the exercise of federal judicial power when Indian tribes were challenging the lawfulness and constitutionality of certain state taxes. Although the tribes did not have formal designations as instrumentalities of the United States, we assumed the interests they asserted were aligned with the interests of the Federal Government. Reserving the question of the precise significance of a federal instrumentality designation, the Court said this congruence of interests was not sufficient to give the tribes an exemption from the Act. 425 U. S., at 471–472. We went on to find the tribes exempt from the Act only because a second federal statute granted sweeping federal-court jurisdiction where an Indian tribe was a party. *Id.,* at 472 (citing 28 U. S. C. § 1362 (1976 ed.)). *Moe* is instructive here. As in *Moe,* the PCA's say their own mission is defined and controlled by federal law and that their interests are the

same as those of the United States. We conclude here, as we did in *Moe*, that this argument is insufficient to justify an exception to the Tax Injunction Act.

True, important consequences flow from the congressional decision to designate a PCA formed pursuant to statute as "an instrumentality of the United States." 12 U. S. C. § 2071(b)(7). The tax immunity a PCA has under § 2077 is a permitted consequence of its status as a federal instrumentality. An instrumentality of the United States can enjoy the benefits and immunities conferred by explicit statutes, however, without the further inference that the instrumentality has all of the rights and privileges of the National Government.

Respondents attempt to counter this point by arguing that *NLRB* v. *Nash-Finch Co.*, 404 U. S. 138 (1971), is applicable here and supports their cause. *Nash-Finch* involved not the Tax Injunction Act, but the Anti-Injunction Act, the statute which restricts the authority of federal courts to enjoin proceedings in state courts. 28 U. S. C. § 2283. The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Just as the Tax Injunction Act is inapplicable where the United States is a party, a parallel rule prevails under § 2283. *Leiter Minerals, Inc.* v. *United States*, 352 U. S. 220, 225–226 (1957) (The restrictions of § 2283 are inapplicable in a suit brought by the National Government). The question in *Nash-Finch* was whether the National Labor Relations Board (NLRB) came within the United States' exception to § 2283. We held it did. In so ruling, we observed the NLRB's regulatory power "pre-empts the field." 404 U. S., at 144; see also *id.*, at 147 ("The exclusiveness of the federal domain is clear . . ."). The case does not aid the PCA's, for their powers are far different from those of the NLRB. As will be discussed in more detail below, the

PCA's more closely resemble the private entities *Nash-Finch* distinguished from the Federal Government and its agencies. *Id.*, at 146.

As to the Tax Injunction Act itself, the Courts of Appeals have adopted different standards over time for deciding whether a federal instrumentality may sue in federal court to enjoin state taxation where the United States is not a co-plaintiff. Under the most restrictive approach, there is no exception to the Tax Injunction Act for federal instrumentalities unless the United States sues as a co-plaintiff. See, *e. g., United States* v. *State Tax Commission*, 481 F. 2d 963, 975 (CA1 1973) ("It is reasonable, as a prerequisite to by-passing normal state tax collection and litigation channels, that [the instrumentalities] persuade the Attorney General of the United States . . . to join in their claim"); *Housing Authority of Seattle* v. *State of Washington, Dept. of Revenue*, 629 F. 2d 1307, 1311 (CA9 1980) (agreeing with the First Circuit in *State Tax Commission* that "such joinder [with the United States as co-plaintiff] is necessary before a federal instrumentality can overcome the restrictions" of the Tax Injunction Act). After its decision in *State Tax Commission*, the Court of Appeals for the First Circuit modified what had seemed to be a bright-line rule to produce a different test: "[E]ach instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." *Federal Reserve Bank of Boston* v. *Commissioner of Corporations and Taxation of Mass.*, 499 F. 2d 60, 64 (1974). Federal Reserve banks, the Court of Appeals noted, are not analogous to private corporations, but rather are "plainly and predominantly fiscal arms of the federal government" with interests "indistinguishable from those of the sovereign." *Id.*, at 62. The court also pointed to a federal statute giving a Federal Reserve bank "unrestricted access to the district courts," *id.*, at 63 (referring to 12 U. S. C. § 632); and to the Federal Reserve System's unusual position "outside the executive chain of

command," 499 F. 2d, at 63. See also *Bank of New England Old Colony* v. *Clark*, 986 F. 2d 600, 602–603 (CA1 1993) (describing *Federal Reserve bank* standard as a "flexible test").

Under any of the tests we have described, PCA's would not be exempt from the restrictions of the Tax Injunction Act. The United States has not joined as a co-plaintiff and indeed opposes the District Court's exercise of jurisdiction. We need not inquire whether the holding of *Nash-Finch*—to the effect that an agency with broad regulatory power is exempt from § 2283 when it sues in its own name and not through the Attorney General or in the name of the United States—is applicable as well to the Tax Injunction Act. Whatever may be the rule under the Tax Injunction Act where a federal agency or body with substantial regulatory authority brings suit, PCA's are not entities of that description. PCA's are not granted the right to exercise government regulatory authority but rather serve specific commercial and economic purposes long associated with various corporations chartered by the United States. Other examples include the Atlantic and Pacific Railroad Company (chartered under an Act of 1866 to construct and maintain a railroad and telegraph line from Springfield, Missouri, to the Pacific Ocean, see *Smith* v. *Reeves*, 178 U. S. 436, 436–437 (1900)); the Rural Telephone Bank (7 U. S. C. § 941); the United States Enrichment Corporation (42 U. S. C. § 2297a, repealed effective on date of privatization, Pub. L. 104–134, § 3116, 110 Stat. 1321). Indeed, in *Smith* v. *Reeves*, we treated the federally chartered corporation as a private citizen, not as an arm of the United States, and held it to be subject to the Eleventh Amendment bar on suits against States. 178 U. S., at 446–447.

The PCAs' business is making commercial loans, and all their stock is owned by private entities. Their interests are not coterminous with those of the Government any more than most commercial interests. Despite their formal and undoubted designation as instrumentalities of the United

States, and despite their entitlement to those tax immunities accorded by the explicit statutory mandate, PCA's do not have or exercise power analogous to that of the NLRB or any of the departments or regulatory agencies of the United States. This suffices for us to conclude that instrumentality status does not in and of itself entitle an entity to the same exemption the United States has under the Tax Injunction Act.

The Tax Injunction Act is grounded in the need of States to administer their fiscal affairs without undue interference from federal courts. As all parties concede, respondents have a "speedy, plain, and efficient remedy" in state court. In holding that the PCA's are subject to the Act's restriction on federal-court jurisdiction, we further the State's interests without sacrificing those of the Government of the United States.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*