**CALIFORNIA CREDIT UNION LEAGUE, Plaintiff–Appellee,**

v.

**CITY OF ANAHEIM, Defendant–Appellant.**

No. 95–55205.

United States Court of Appeals, Ninth Circuit.

Sept. 1, 1999.

Thomas Ott, Ott & Hoffman, Glendale, California, for Plaintiff–Appellee.

Before: BEEZER and BRUNETTI, Circuit Judges, and TANNER,[1] District Judge.

BRUNETTI, Circuit Judge:

The California Credit Union League ("League") filed this action against the City of Anaheim ("Anaheim") seeking a declaratory judgment that the city's application of a transient occupancy tax to credit union employees staying in local hotels violated 12 U.S.C. § 1768. The district court awarded summary judgment to the League and we affirmed. *See California Credit Union League v. City of Anaheim,* 95 F.3d 30 (9th Cir.1996), *vacated and remanded,* 520 U.S. 1261, 117 S.Ct. 2429, 138 L.Ed.2d 191 (1997). Our decision was vacated by the Supreme Court in light of *Arkansas v. Farm Credit Services of Central Arkansas,* 520 U.S. 821, 117 S.Ct.

1. Hon. Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

1776, 138 L.Ed.2d 34 (1997), and the case was remanded. We must now determine whether the United States can join this action as a co-plaintiff and whether such belated joinder by the United States retroactively cures any jurisdictional defect that previously existed.

## I.

The impetus of this case was a credit union seminar held in Anaheim in November of 1993. Federal credit union employees who attended the seminar stayed at the Disneyland Hotel in Anaheim and were assessed a transient occupancy tax pursuant to the Anaheim Municipal Code. The tax was 13% of the room rate charged by the hotel. The League responded to the tax by filing this lawsuit alleging that the transient tax as assessed against the credit union employees attending the seminar violated 12 U.S.C. § 1768. The district court granted the League summary judgment and we affirmed.

We noted that federal credit unions enjoy broad immunity from local taxation under Section 1768 and concluded that "[b]ecause the federal credit unions' employees were attending to credit union business while staying at the Disneyland Hotel in Anaheim, they were 'constituent parts' of the credit union and immune from Anaheim's transient occupancy tax under Section 1768." *California Credit Union League,* 95 F.3d at 32. We did not, however, address the issue of whether the Tax Injunction Act, 28 U.S.C. § 1341, prohibited the League from suing Anaheim in federal court without the United States joined as a co-plaintiff.

The Supreme Court vacated our decision in light of its decision in *Arkansas v. Farm Credit Services of Central Arkansas* and remanded. *See City of Anaheim v. Cal. Credit Union League,* 520 U.S. 1261, 117 S.Ct. 2429, 138 L.Ed.2d 191. In *Farm Credit Services,* the Supreme Court held that the Tax Injunction Act prevented Production Credit Associations-federally chartered corporate financial institutions that make loans to farmers-from suing a state in federal court to enjoin state taxation

unless the United States was joined as a plaintiff. *See id.* at 824, 117 S.Ct. 1776. The Court reasoned that because Production Credit Associations do not exercise the same powers that departments and regulatory agencies of the United States exercise the "instrumentality status" of Production Credit Associations "does not in and of itself entitle an entity to the same exemption the United States has under the Tax Injunction Act." *Id.* at 882, 117 S.Ct. 1776. Accordingly, the Court dismissed the Production Credit Association's suit against the State of Arkansas without reaching the merits of the tax dispute.

After the Supreme Court vacated our decision in this case in light of *Farm Credit Services,* we received a joint motion from the League and the United States to join the United States as co-plaintiff. Although the joint motion adequately discussed the joinder issue, the motion did not discuss whether the joinder of the United States as co-plaintiff would operate *nunc pro tunc* to "cure" the jurisdictional defect that existed in the prior proceedings. We, therefore, ordered the parties to file supplemental letter briefs addressing the issue of "whether joinder of the United States will 'cure' the jurisdictional defects that existed before the district court."

We have received the parties' supplemental briefs and now address whether the United States can join this action as a co-plaintiff and whether such belated joinder by the United States retroactively cures any jurisdictional defect that previously existed. We conclude that the United States can join this action as a co-plaintiff and that the United States belated joinder retroactively cures any jurisdictional defect that previously existed. We, therefore, reaffirm the district court's judgment in favor of the League for the reasons stated in our prior opinion.

## II.

Rule 21 of the Federal Rules of Civil Procedure provides in relevant part

that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. Although Rule 21 is not directly applicable to the courts of appeals, courts have consistently recognized that appellate courts can join parties pursuant to Rule 21 when a case is pending on appeal. *See Mullaney v. Anderson,* 342 U.S. 415, 417, 72 S.Ct. 428, 96 L.Ed. 458 (1952); *Spangler v. Pasadena City Bd. of Ed.,* 552 F.2d 1326, 1329 (9th Cir.1977). Thus, a party may join a lawsuit on appeal under Rule 21 when the party seeking joinder requests the same remedy as the original party and offers the same reasons for that remedy and earlier joinder would not have affected the course of the litigation. *See Spangler,* 552 F.2d at 1328 (citing *Rogers v. Paul,* 382 U.S. 198, 199, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965)); *Mullaney,* 342 U.S. at 417, 72 S.Ct. 428. The United States can join this lawsuit because it is requesting the same remedy as the League and offers the same reasons for that remedy and because earlier joinder by the United States would not have affected the course of this litigation.

The United States is requesting the same relief as the League because the amicus brief filed by the United States sought a declaratory judgment that Anaheim's transient occupancy tax impermissibly taxed the federal credit unions. To support its argument, the United States, like the League, cited 12 U.S.C. § 1768 and argued that the transient occupancy tax fell upon the various credit unions rather than the individual employees. The joinder of the United States at an earlier stage of this case would not have affected the course of this litigation because the district court and this court would have reached the same conclusions and granted the League the declaratory judgment it sought if the United States had participated in earlier proceedings. The final factor that supports joinder of the United States is the fact that Anaheim has no objection to this court granting the joint motion filed by the League and the United States.

We, therefore, grant the joint motion to join the United States as co-plaintiff because the position of the United States is consistent with the position of the League and does not alter these proceedings and because the League has no objection to the United States joining this case as a plaintiff.

### III.

■ Joinder of the United States as a co-plaintiff in this case does not, in and of itself, resolve the issue before us on remand because we must determine whether the joinder of the United States at the appellate level retroactively cures the jurisdictional defect identified by *Farm Credit Services.* The League and the United States argue that the belated joinder of the United States retroactively cures any jurisdictional defect because a retroactive cure will serve judicial economy and the interests of justice by avoiding a remand to the district court that will result in a pre-ordained judgment. Anaheim argues that federal subject matter jurisdiction must exist at the time the action is commenced and that the League cannot retroactively cure a jurisdictional defect that existed when the action was commenced through post-complaint conduct (i.e., the joinder of the United States in this court). We conclude that this is one of the rare cases where a jurisdictional defect can be retroactively cured at the appellate level.

In *Mullaney v. Anderson,* a fisherman's union and its secretary-treasurer sued the Alaska tax commissioner challenging a licensing scheme adopted by the Territorial Legislature of Alaska. The tax commissioner argued for the first time in the Supreme Court that the union and its secretary-treasurer did not have standing to maintain the lawsuit. To cure any jurisdictional defect, the union and its secretary-treasurer moved to join two of its members as plaintiffs. Relying on Rule 21 of the Federal Rules of Civil Procedure, the Court granted the union's motion even though it recognized that such joinder was

rare. *See Mullaney,* 342 U.S. at 417, 72 S.Ct. 428. The Court reasoned that "[t]o dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs contrary to effective judicial administration-the more so since, with the silent concurrence of the defendant, the original plaintiffs were deemed proper parties below." *Id. Mullaney,* therefore, instructs that appellate courts may join a party as a plaintiff to cure a jurisdictional defect when the joinder will promote judicial economy and not prejudice the defendant.

The Court reaffirmed *Mullaney* in *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989), when it concluded that the courts of appeals could dismiss a dispensable nondiverse party to perfect diversity jurisdiction. The Court noted that appellate courts have consistently relied on Rule 21 and *Mullaney* to cure jurisdictional defects and stated:

> We decline to disturb that deeply rooted understanding of appellate power, particularly when requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention. Appellate-level amendments to correct jurisdictional defects may not be the most intellectually satisfying approach to the spoiler problem, but ... because law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities.

*Id.* at 836–37, 109 S.Ct. 2218 (citations and internal quotations omitted). The Court went on to conclude that the Seventh Circuit did not err when it dismissed a non-diverse defendant on appeal to perfect jurisdiction because, without the dismissal of the non-diverse defendant, the plaintiff would have simply re-filed its complaint against the diverse defendants, submitted discovery materials already obtained, and proceeded to a preordained judgment. *See id.* at 837, 109 S.Ct. 2218.

Although a plurality of the Supreme Court has questioned the validity of *Mullaney* and *Newman–Green, see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569–70 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("It cannot be that, by later participating in the suit, the State Department and AID retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.") (Scalia, J., plurality), *Mullaney* and *Newman–Green* stand on firm ground. A majority of the Court has never questioned let alone overruled *Mullaney* or *Newman–Green* and, since *Lujan,* a unanimous Court has relied, in part, on *Newman–Green* to conclude that "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if the federal jurisdictional requirements are met at the time judgment is entered." *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 64, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

In *Caterpillar,* a defendant removed a state court action to federal court believing that a settlement between the plaintiff and the non-diverse defendant created complete diversity. *See id.* at 65, 117 S.Ct. 467. The plaintiff filed a motion to remand arguing that diversity jurisdiction did not exist because his insurer had not settled its subrogation claim against the non-diverse defendant. *See id.* The district court erroneously denied the plaintiff's motion to remand and the case proceeded to trial where a unanimous verdict was returned in favor of the diverse defendant. Before trial, however, the plaintiff's insurer settled its claim against the non-diverse defendant yielding complete diversity. *See id.* at 66–67, 117 S.Ct. 467. The plaintiff argued that the district court's judgment in favor of the diverse defendant had to be vacated because the district court lacked subject matter jurisdiction at the time .of removal. Citing *Newman–Green,* the Court recognized the merit of the plaintiff's argument but concluded that the plaintiff's argument was trumped by the fact that "once a case has been tried in federal court ... considerations or finality,

efficiency, and economy become overwhelming." *Id.* at 75, 117 S.Ct. 467. *Caterpillar,* therefore, reinforces the rule that technical jurisdictional defects can be outweighed by other jurisprudential concerns.

Under *Mullaney* and *Newman–Green,* the joinder of the United States as a plaintiff in this case has retroactively cured the jurisdictional defect identified by *Farm Credit Services.* If we were to remand this case with instructions to dismiss or to have the United States litigate the merits of the tax exemption issue, the United States and the League, as co-plaintiffs, would simply rely on the League's original complaint against Anaheim, submit the same materials that the League already filed in the district court, and receive a preordained judgment in their favor. The United States and the League "should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity," *Newman–Green,* 490 U.S. at 837, 109 S.Ct. 2218, because judicial economy and considerations of practicalities outweigh any concern we have regarding jurisdictional purity. Moreover, our refusal to remand this case for meaningless proceedings in the district court can in no way prejudice Anaheim because Anaheim already received a full and fair opportunity to litigate the merits of this case and it never expressed any concern that the Tax Injunction Act barred the League's suit. *See Mullaney,* 342 U.S. at 417, 72 S.Ct. 428. Anaheim cannot now rely on a technical jurisdictional issue simply because it lost on the merits. This is especially true since Anaheim never even opposed the joint motion to the join the United States as a co-plaintiff.

Anaheim argues that *Newman–Green* is distinguishable because in that case the court of appeals dismissed a dispensable party to cure a jurisdictional defect while in this case we are joining an indispensable party to cure a jurisdictional defect. This is a distinction without a difference. In both instances, the appellate court is bringing the proper parties before it to cure a jurisdictional defect and does so to prevent needless judicial proceedings without any resulting prejudice to the remaining parties. Moreover, even if Anaheim could distinguish this case from *Newman–Green,* it would be to no avail because *Mullaney* demonstrates that an appellate court can join parties to cure a jurisdictional defect just as an appellate court can dismiss parties to cure a jurisdictional defect. *See Mullaney,* 342 U.S. at 417, 72 S.Ct. 428.

Anaheim also argues that the joinder of the United States does not cure the jurisdictional defect that existed in this case because jurisdiction must exist at the time the action is commenced. This argument is misplaced because *Mullaney* and *Newman–Green* represent an exception to the general rule that jurisdiction must exist at the time the action is commenced. *See Newman–Green,* 490 U.S. at 830, 109 S.Ct. 2218 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed. Like most general principles, however, this one is susceptible to exceptions...."). Accordingly, because this case falls squarely under the exception outlined in *Mullaney* and *Newman–Green,* Anaheim's recitation of the general that jurisdiction must exist at the time the action is commenced is misplaced and unconvincing. We, therefore, conclude that the joinder of the United States as a plaintiff in this case has retroactively cured the jurisdictional defect identified by *Farm Credit Services.*

**IV.**

We recognize that our authority to join a party to cure a jurisdictional defect must be "exercised sparingly," *Newman–Green,* 490 U.S. at 837, 109 S.Ct. 2218; *see also Mullaney,* 342 U.S. at 417, 72 S.Ct. 428 ("Rule 21 will rarely come into play at this stage of a litigation."), but this case represents an extraordinary situation where a retroactive cure of a jurisdictional defect will promote the interests of justice without any resulting prejudice to the parties. Accordingly, we **GRANT** the joint motion to join the United States as co-plaintiff and

AFFIRM the district court's award of summary judgment in favor of the League for the reasons set forth in our prior opinion.