UNION PACIFIC RAILROAD COMPANY, et al., Plaintiffs–Appellants,

v.

DEPARTMENT OF REVENUE OF the STATE OF OREGON and the State of Oregon, Defendants–Appellees.

Nos. 86–4212, 87–3554.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1989.

Decided Dec. 4, 1990.

Eugene A. Ritti, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for plaintiffs-appellants.

Michael D. Reynolds, Asst. Sol. Gen., Marilyn J. Harbur, Asst. Atty. Gen., Tax Section, Salem, Or., for defendants-appellees.

Paul Snider, Ass'n of Oregon Counties, Salem, Or., for intervenors-appellees.

Before SCHROEDER, POOLE and NELSON, Circuit Judges.

POOLE, Circuit Judge:

Appellant Union Pacific Railroad Company, et al. ("Union Pacific"), originally joined by Burlington Northern Railroad Company, brought separate actions in federal court alleging discriminatory taxation by the state of Oregon during the 1985 and 1986 tax years in violation of the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C. § 11503 ("the Act").[1] Union Pacific's complaint pertaining to the 1985 tax year is appeal No. 86–4212 and its challenge to the 1986 tax determinations is appeal No. 87–3554.[2] In deference to this Court's ruling in *Atchison, Topeka & Santa Fe Ry. Co. v. Bd. of Equalization*, 795 F.2d 1442 (9th Cir.1986) (*"Atchison"*), *vacated*, 828 F.2d 9 (9th Cir.1987), the district court abstained from exercising subject matter jurisdiction over Union Pacific's claims. In light of recent changes in governing case law, Union Pacific now urges us to overturn the district court's abstention orders. We agree with that request and now reverse and remand for further proceedings.

## BACKGROUND

This action arose from the Oregon Department of Revenue's ("DOR") valuation of Union Pacific's transportation property for the purpose of assessing ad valorem taxes involving the January 1, 1985 and January 1, 1986 assessment dates.[3] On an annual basis, DOR appraisers value each railroad's rail transportation property as a unit (i.e., systemwide) and allocate a proportionate share of the entire value to Oregon. Or.Rev.Stat. § 308.555. The statewide figures are then further apportioned and equalized between the various Oregon counties in which the properties are located. Or.Rev.Stat. § 308.565. Once the assessment process is complete, taxes are levied and collected by the counties in three equal installments.[4]

When a railroad disagrees with an assessment, an administrative appeal lies to the DOR. Or.Rev.Stat. § 308.595(3). After a hearing, the DOR director makes a final determination in the form of a written order. Or.Rev.Stat. § 305.115(1). The director's order constitutes a final determination as to all issues of fact and law, subject to judicial review by the Oregon Tax Court and the Oregon Supreme Court. Or.Rev. Stat. § 305.115(4).

---

1. Section 11503, Pub.L. No. 95–473, 92 Stat. 1337 (1978), represents the codification of legislation that was originally enacted as Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 31 (1976).

2. Initially this action was brought by Union Pacific Railroad Company, et al. and Burlington Northern Railroad Company. On June 18, 1990, Burlington Northern filed a motion for voluntary dismissal of only its appeals on the grounds that the matter had been fully compromised and settled. On October 9, 1990, this court granted Burlington Northern's motion for voluntary dismissal.

3. Appellees point out that the Railroads also challenge the tax assessments for the 1983, 1984, 1987 and 1988 tax years. Those disputes, however, are not at issue in this appeal.

4. Taxes are due in equal one-third payments on November 15 of the tax year, and February 15 and May 15 of the year following the assessment date. Or.Rev.Stat. § 311.505(1).

In early fall of 1985, Union Pacific filed a separate complaint against defendants with the Oregon Tax Court alleging that the 1985 assessments were discriminatory. Specifically, Union Pacific contended that the DOR had assessed its property far in excess of its true market value. No action has been taken by the state court because another matter is still pending.[5]

Subsequently, in December 1985, Union Pacific also filed valuation claims in federal district court pursuant to section 11503 of the Act, seeking declaratory and injunctive relief.[6] Congress promulgated the Act to promote the financial stability of this nation's railroad industry by eradicating a prevalent practice among state taxing authorities of assessing railroads at discriminatory rates. *See Union Pacific R. Co. v. Public Utility Com'n*, 899 F.2d 854, 857 (9th Cir.1990). Section 11503 affords railroads a federal forum in which to challenge a state's discriminatory taxation practices by investing federal district courts with concurrent jurisdiction to adjudicate such matters.[7]

Responding to Union Pacific's complaint in district court, DOR moved to dismiss, asserting that § 11503 does not confer on federal courts jurisdiction to make an independent determination of the true market value of railroad property. In the alternative, DOR requested the district court to abstain from exercising such jurisdiction as it might have under § 11503 pending exhaustion of Union Pacific's claims in state court, or at least until the Ninth Circuit resolved the jurisdictional issue.[8]

On May 5, 1986, the district court denied both motions. The trial judge concluded that both Congressional intent and the plain language of § 11503 indicate that federal jurisdiction over valuation claims is proper. The court further stated, disposing of defendants' abstention motion, that "[t]he national policy against discriminatory taxation of railroads reflected in § 11503 requires federal district courts to hear § 11503 cases brought before them."

5. Proceedings were stayed in the Oregon Tax Court pending determinations by that court on petitions filed by appellants pertaining to earlier tax periods. No disposition had been rendered on those matters as of the date this appeal was instituted.

6. Section 11503(b) provides in pertinent part:
   "The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
   "(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
   "(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.
   "(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction...."

7. Section 11503(c) reads in part:
   "Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction...."
   Thus, it is clear from the express language of the legislation that Congress intended for the Act, in furtherance of the protection of railroads, to represent an exception to the Tax Injunction Act, 28 U.S.C. § 1341, which normally bars federal injunctive intervention into matters of state tax administration where "plain, speedy and efficient" remedies are available under state law.

8. When Union Pacific filed its complaints challenging the 1985 assessments, this court had not yet decided *Atchison*, 795 F.2d 1442. A central issue presented in that case was the scope of the district court's jurisdiction under § 11503, specifically, whether the federal court could hear valuation disputes (i.e., claims that the state has overvalued rail transportation property, or alternatively, undervalued the assets of other industrial and commercial property owners in the same assessment jurisdiction, with the result that the taxes levied on rail transportation property are proportionally higher even where the same assessment ratio is applied).

On July 31, 1986, this court handed down its opinion in *Atchison*, 795 F.2d 1442, holding that although § 11503 does invest federal district courts with jurisdiction over valuation disputes, abstention was warranted to afford the state court the first opportunity to review the railroads' claims. *Id.* at 1447–1449.

Thereafter, DOR filed a motion urging the district court to reconsider its prior abstention determination. Deferring specifically to this court's pronouncement in *Atchison*, the trial judge then reversed his earlier ruling. The Railroads filed a timely appeal.

Meanwhile, pending consideration by the United States Supreme Court of *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987), a case posing related issues, we deferred submission of petitions for rehearing filed in *Atchison* awaiting decision in *Burlington Northern*. We also granted Union Pacific's request for a stay of district court proceedings pending appeal and enjoined tax collection, subject to reconsideration based on the outcome of the *Atchison* petitions for rehearing.

Union Pacific also filed a challenge in district court with respect to its 1986 assessments. Union Pacific subsequently instituted "protective actions" in the state tax court with regard to both the 1985 and 1986 assessments.[9]

DOR filed a motion in district court for abstention in the 1986 valuation dispute. On January 6, 1987, the court granted DOR's motion. Union Pacific appealed from that order.

Shortly thereafter, on April 28, 1987, the United States Supreme Court rendered its decision in *Burlington Northern*. 481 U.S. 454, 107 S.Ct. 1855. Writing for a unanimous Court, Justice Marshall held that federal district courts may review valuation claims brought under § 11503. *Id.* at 460–464, 107 S.Ct. at 1859–1861.

*Burlington Northern* also offers important guidance on the issue of abstention. In that case, the Supreme Court reviewed a Tenth Circuit ruling that affirmed the district court's dismissal of a valuation claim brought under § 11503 for lack of subject matter jurisdiction. The appeals court had concluded that judicial restraint was necessary to "avoid 'an inevitable clog of federal dockets' and 'unreasonable delay of the state tax collection process.'" 481 U.S. at 464, 107 S.Ct. at 1861. Responding to the Tenth Circuit's reasoning, the Supreme Court stated, "These are policy considerations which may have weighed heavily with legislators who considered the Act and its predecessors. It should go without saying that we are not free to reconsider them now." *Id.*

We followed the Supreme Court's lead by subsequently vacating our opinion in *Atchison* and concomitantly remanding the matter to the district court with instructions to proceed. 828 F.2d at 9–10 (vacation order issued *per curiam*).

Union Pacific now contends, following the final decision in *Burlington Northern*, that the district court's abstention orders were improper. We agree.

## DISCUSSION

### A.

■ The state attempts to carve out an exception for itself to the district court's subject matter jurisdiction by raising issues of finality and ripeness. It argues that an affirmance of the district court's abstention orders for the 1985 and 1986 tax periods

---

**9.** Union Pacific maintains that its purpose in filing a complaint in the state court with regard to both the 1985 and 1986 assessments was a "protective" one. Oregon law provides that appeals to the tax court must be filed within 60 days from the date of the DOR's formal assessment order. Or.Rev.Stat. § 305.560(1). There-

fore, Union Pacific would have lost its right to appeal had it allowed the 60-day period to elapse without taking action. *See Southern Ry. Co. v. State Bd. of Equalization,* 715 F.2d 522, 525 n. 6 (11th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

would not be inconsistent with *Burlington Northern* nor with this court's subsequent opinion vacating *Atchison* because neither of those cases specifically addressed the finality of the valuation determination at issue or resolved the abstention question.

According to the state, because of the unique structure of the Oregon tax system, the DOR's orders merely constitute preliminary determinations which will not become assessments ripe for federal court review under § 11503 until the state tax court has first acted on the Railroads' claims. In particular, the state relies on the fact that claims appealed to the tax court are subject to *de novo* review. In addition, it contends that the first meaningful evidentiary proceedings are conducted before the Oregon Tax Court, not the DOR.

While we have no doubt of the Oregon Tax Court's qualification to review claims under Oregon's tax laws, it does not necessarily follow that a federal court remains without jurisdiction to act until the state tax court has spoken. In fact, both the Oregon tax scheme and the plain language of the § 11503 convince us that the state's position is untenable.

First, Oregon tax laws belie the contention that the state regards orders issued by DOR as having no force. The Oregon Tax Court may not review a DOR ruling until the department has "determine[d] *finally* all the questions of law and fact arising in the appeal." Or.Rev.Stat. § 305.115(4) (emphasis added); *Hood River County v. D.O.R.*, 289 Or. 925, 618 P.2d 968 (1980). DOR's final orders are prepared in formal, written form and are subject to appeal to a court of law. Or.Rev.Stat. § 305.115(1). Moreover, parties who choose to forego an appeal to the tax court are bound by the DOR's orders.

Thus, the sole basis for the state's position that DOR's orders are not binding in the instant dispute is that Union Pacific chose to seek review in the state tax court. On the facts of this case, this distinction is less than compelling.

Union Pacific filed claims in the state court only as a protective measure since the question of a district court's jurisdiction to hear valuation disputes brought under § 11503 was as yet unanswered. Now that the Supreme Court has rendered a dispositive ruling on that issue, there is no logical reason to bar Union Pacific from pursuing relief in federal court under § 11503. To do so would work hardship on carriers by denying them the benefit of the special protections Congress envisioned when it promulgated the Act, especially where, as here, the state court has not yet taken action on Union Pacific's claims.

Second, the plain language of the Act compels the conclusion that Union Pacific has asserted valid claims under § 11503. The proscriptive language of § 11503 is expansive. It applies not only to a state itself, but also to any "subdivision of a State, or [an] authority acting for a State or subdivision of a State." § 11503(b). Since on its face the Act targets any state taxing authority acting on behalf of a state, we conclude that the DOR's orders are themselves actionable. Consequently, further state action in the form of a tax court determination, or otherwise, is entirely unnecessary to establish a claim cognizable under § 11503.

The state makes an assiduous effort to distinguish the Oregon Tax Court from courts which review tax claims in other states. It emphasizes that the Oregon Tax Court possesses a high degree of expertise as well as expansive powers which render it central to Oregon's "valuation decisionmaking" process. Notwithstanding the unique qualifications of the Oregon Tax Court, we should nevertheless presume that the legislators who promulgated § 11503 took the potential for variation among state tax systems into account when formulating a national standard to protect railroads. DOR urges precisely the same brand of rethinking of policy considerations behind § 11503 that was rejected by the Supreme Court in *Burlington Northern.* 481 U.S. at 464, 107 S.Ct. at 1861.

## B.

■ Appellees contend in the alternative that even if the district court has subject matter jurisdiction over Union Pacific's claims, abstention is nevertheless proper because Union Pacific will not suffer any financial injury by permitting its claims to be reviewed in the first instance by the state tax court, and because a determination by that court may obviate the need for federal intervention altogether.[10]

Our interpretation of *Burlington Northern* is considerably more expansive than appellees'. Appellees ignore the fact that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Rather, the rule is that the district court has a "virtually unflagging" responsibility to hear and decide those matters over which it has jurisdiction. *Id.* at 817, 96 S.Ct. at 1246. We view the Supreme Court's opinion in *Burlington Northern* as an authoritative signal that the district court has an obligation to exercise the power specially vested in that court by Congress to adjudicate those § 11503 claims properly before it. Since we have already found that Union Pacific has asserted claims cognizable under § 11503, we conclude that *Burlington Northern* is controlling.

## CONCLUSION

We acknowledge that District Judge Leavy's reading of the law and his decision not to abstain was proper. Accordingly, and belatedly, that court's subsequent orders which are the subject matter of this appeal are hereby reversed and the case is remanded for further proceedings consistent with this opinion.

---

10. The state's argument is apparently premised on the *Pullman* abstention doctrine. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* abstention is appropriate in cases where a federal constitutional issue may be avoided or materially affected by a state court determination of an issue under state law. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Pullman*, 312 U.S. at 496, 61 S.Ct. at 643; *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 376–78 (9th Cir.1982). We conclude, however, that the *Pullman* abstention is inapposite because *Burlington Northern* is dispositive of appellees' argument.