**MCI COMMUNICATIONS SERVICES, INC. and MCIMetro Access Transmission Services LLC, Plaintiffs–Appellants,**

v.

**CITY OF EUGENE, OREGON, Defendant–Appellee.**

No. 07–35935.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2009.

Filed Sept. 15, 2009.

Timothy J. O'Connell, Stoel Rives, LLP, Seattle, WA, Henry Weissman, Esquire, Munger, Tolles & Olson LLP, Los Angeles, CA, for Plaintiffs–Appellants.

Sharon A. Rudnick, Esquire, Harrang Long Gary Rudnick P.C., Eugene, OR, for Defendant–Appellee.

Before: PAEZ and RAWLINSON, Circuit Judges, and JENKINS *, District Judge.

### MEMORANDUM **

Appellants MCI Communications Services, Inc. and MCIMetro Access Transmission Services LLC (collectively "MCI") appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction, arguing that the court erred in concluding that the City's telecommunications registration fees are "taxes" for purposes of the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA").[1] MCI argues that the court also erred dismissing its challenge to the "non-fee" provisions of the City's telecommunications ordinance as being inextricably entwined with MCI's challenge to the fee provisions. We have jurisdiction of MCI's appeal pursuant to 28 U.S.C. § 1291, and we affirm in part and vacate and remand in part.

We review de novo the district court's Rule 12(b)(1) dismissal of plaintiffs' challenges to the City's telecommunications ordinance. *Wilbur v. Locke*, 423 F.3d 1101, 1109 (9th Cir.2005).

■■■ 1. The district court dismissed MCI's claim for declaratory and injunctive relief against enforcement of Eugene, Oregon's Ordinance No. 20083 for lack of jurisdiction because it concluded that the fee of two percent of gross revenue charged to telecommunications providers owning and operating facilities within the City, plus another seven percent of their gross revenue for the privilege of using public rights-of-way, is a "tax" within the meaning of the TIA as construed in *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 931 (9th Cir.1996), and *Qwest Corp. v. City of Surprise*, 434 F.3d 1176 (9th Cir.2006).[2]

*Bidart* and *City of Surprise* identify the key factors to consider in deciding whether a municipal fee is a "tax" for purposes of the TIA: (1) the entity that imposes the charge; (2) the parties upon whom the charge is imposed; and (3) whether the charge is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed. *Id.* Where the first two *Bidart* factors are not dispositive, *e.g.*, if the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, courts emphasize the third factor—the way in which the revenue is ultimately spent; assessments treated as general revenues are deemed to be "taxes," as are special funds that are "expended to provide 'a general benefit to the public.'" *Bidart*, 73 F.3d at 932.

MCI argues that other factors should prove decisive, *viz.*, nomenclature (the ordinance refers to the charges as a "fee," not a "tax"); footing ("user fees," particularly fees charged for the use of public

---

* The Honorable Bruce S. Jenkins, United States Senior District Judge for the District of Utah, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The TIA reads:

   The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

2. The district court did not decide whether the fee provisions of the City's Ordinance No. 20083 either prohibit or may have "the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service," 47 U.S.C. § 253(a), and thus would be preempted by the Telecommunications Act of 1996, leaving that question to the Oregon state courts.

rights-of-way, are not "taxes"); the nature of the obligation ("voluntary" payment vs. "compulsory" assessment); the method of collection (levy, refund and summary collection procedures available for taxes, not user fees); form of payment (the City may accept telecommunications services as in-kind payment of the 7% license fee (§ 3.415(6))), and federal telecommunications policy (the Telecommunications Act of 1996 intended to provide a federal forum for relief from excessive local fees pre-empted by the Act).

Moreover, MCI argues that applying the *Bidart* factors, the fees in question are administered by the City Manager, not its tax collectors; they are imposed upon a narrow class of persons, namely telecommunications providers; and the fees are collected to pay for the development and implementation of the City's regime to regulate telecommunications services within the municipality, not as a general revenue measure.

Concerning MCI's asserted non-*Bidart* factors, the fact that Ordinance No. 20083 labels a charge as a "fee" rather than a "tax" is not controlling. *See City of Surprise,* 434 F.3d at 1183–84 and cases cited therein. Nor is the fact that the charge may be characterized as a "user fee" footed upon the volitional use of public rights-of-way or some other benefit or privilege, rather than a compulsory exaction of revenue. *Id.* Absent a direct levy on property, the "in-kind" payment of taxes seems unusual—but no less so than in-kind payment of municipal license fees,[3] and thus novelty alone does not prove decisive.

Noting that the Supreme Court has interpreted the TIA as a "broad jurisdictional barrier,"[4] *City of Surprise* concluded that the TIA and the state and local tax savings clause of the Telecommunications Act of 1996, § 601(c)(2), 47 U.S.C.A. § 152 note, limit the latter statute's pre-emptive reach and preclude a federal court from enjoining the assessment of a State or local tax—in that case, exactions assessed upon the gross revenue of telecommunications providers operating or using public rights-of-way within city limits. 434 F.3d at 1183 & n. 3, 1184. *City of Surprise* held that "where, as here, an ordinance requires that a telecommunications provider pay a percentage of its gross revenues to the municipality, and the revenue from that charge is directed to the municipality's general fund, the charge constitutes a tax" for purposes of the TIA. *Id.* at 1184.

Here, like *City of Surprise,* Eugene's Ordinance No. 20083 exacts from MCI specific percentages of its gross revenues. Revenue from the two-percent exaction is placed in a segregated account and is used in part to fund the administration of the City's telecommunications policies and programs, and in part to replace City equipment and fund new City telecommunications projects that benefit the public at large, *e.g.,* providing Internet access at homeless shelters and expanding the City's Web portal project to enhance public online access to City information, records and services. Revenue from the seven-percent exaction is deposited in the City's general fund and is not earmarked for any specific use. In both instances, the district court concluded that the revenue is ex-

---

3. None of MCI's examples of "in-kind" fee payments involved a municipal license fee for use of public rights-of-way, or for other municipal services or benefits.

4. *Arkansas v. Farm Credit Servs. of Cent. Ark.,* 520 U.S. 821, 825, 117 S.Ct. 1776, 138

L.Ed.2d 34 (1997) (observing that the TIA is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Id.* at 826, 117 S.Ct. 1776 (internal quotation marks omitted)).

pended to provide " 'a general benefit to the public,' " *Bidart*, 73 F.3d at 932, rather than providing " 'more narrow benefits to regulated companies' " or defraying the City's costs of regulation. *Hexom v. Oregon Dep't Of Transp.*, 177 F.3d 1134, 1136 (9th Cir.1999) (quoting *San Juan Cellular Tel. Co. v. Public Serv. Comm'n*, 967 F.2d 683, 685 (1st Cir.1992)). *City of Surprise* found such exactions to be taxes for TIA purposes, and counsels a similar result in this case.

MCI argues that we may reach a different result in this case because *City of Surprise* involved "business license taxes," not "traditional fees for the use of rights-of-way, such as the 7% fee at issue in this case." [5] In this context, MCI argues that the Telecommunications Act of 1996—not the TIA—is decisive of the jurisdictional question, and that the 1996 Act empowers the federal courts to determine in every instance whether such local fees are preempted by § 253(a) because they are excessive and non-compensatory. Indeed, MCI posits that Congress intended that such local fees would not be treated as "taxes" at all, and that the TIA plays no part in that analysis.

Yet MCI cites to no case that has adopted or endorsed its blanket theory that in all instances, preemption challenges under § 253(a) to local fees for use of rights-of-way are excepted from the operation of the TIA. To the contrary, *City of Surprise* expressly held that "where, as here, an ordinance requires that a telecommunications provider pay a percentage of its gross revenues to the municipality" for its use of public rights-of-way, and "the

revenue from that charge is directed to the municipality's general fund, the charge constitutes a tax" for TIA purposes. 434 F.3d at 1184.

This court has previously indicated that we "will not carve out exceptions to the Tax Injunction Act unless Congress clearly expresses an intent to create an exception." *Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327, 328 (9th Cir.1989). For example, in *Union Pacific R. Co. v. Dep't of Revenue of State of Or.*, 920 F.2d 581 (9th Cir.1990), Congress had enacted language expressly providing that " '[n]otwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction ... to prevent a violation of' " specific provisions of the Railroad Revitalization and Regulatory Reform Act, from which this court concluded that Congress clearly intended to except the railroad protection provisions from the operation of the TIA. *Id.* at 583 n. 7 (quoting 49 U.S.C. § 11503(c)).

We find no clear expression of congressional intent in this instance.

A municipal fee that is found to be a "tax" under *Bidart* falls outside of federal court jurisdiction under the TIA, regardless of whether it might otherwise be deemed reasonable or excessive under § 253, and it may ultimately be saved from § 253(a) preemption by § 601(c)(2) of the 1996 Act, should the question be raised in state court.[6] MCI insists that this result frustrates the 1996 Act's remedial scheme, but if such municipal charges are to be

---

**5.** MCI also argues that "the exactions considered in *City of Surprise* were not fees for the privilege of using public rights-of-way, but instead were taxes that fell on those persons who used the rights-of-way"—a distinction without a material difference, given MCI's extended discussion of "user fees, particularly charges for use of public rights-of-way."

**6.** Of course, a municipal fee that is not found to be a "tax" under *Bidart* may nevertheless be adjudged by either a federal or state court to be non-compensatory, excessive and burdensome, and thus be preempted by § 253(a).

entirely excepted from the operation of the TIA regardless of the use of such revenue for the public benefit, then it is for Congress to make that exception, not this court.

"As we said in *Bidart*, ... 'the ultimate question remains' whether it is a tax or something else." *Hexom*, 177 F.3d at 1137. Here, the district court's weighing of the three *Bidart* factors is decisive.

■ 2. MCI disputes the district court's reliance on matters outside of the pleadings in determining that the revenue raised under the fee provisions of Ordinance No. 20083 is expended to provide "a general benefit to the public," and is therefore a "tax" under *Bidart*. MCI argues that it was entitled to "notice that the issue was in dispute and an adequate opportunity to ascertain and present relevant facts and arguments supporting [its] claim of jurisdiction," *McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir.2004), and that absent such notice and opportunity to be heard, the allegations of the complaint that such revenues are segregated and earmarked must be accepted as true by the district court.

When a party makes a factual attack on the district court's subject matter jurisdiction under Rule 12(b)(1), the court "need not presume the truthfulness of the plaintiffs' allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and "unlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n. 4 (9th Cir.2006).

In support of a motion to dismiss under Rule 12(b)(1),

> the moving party may submit "affidavits or any other evidence properly before the court. ... It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989) (citations omitted).

*Colwell v. Dep't of Health and Human Serv.*, 558 F.3d 1112, 1121 (9th Cir.2009); *accord Savage v. Glendale Union High School, Dist. No. 205*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003), *cert. denied*, 541 U.S. 1009, 124 S.Ct. 2067, 158 L.Ed.2d 618 (2004) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.") Here, the City furnished a declaration and an exhibit in support of its motion to dismiss, including evidence as to the use of the revenues raised under the ordinance for projects benefitting the public and the deposit of the seven-percent license fee revenues in the City's general fund. MCI did not offer counter-affidavits or other evidence controverting the City's evidence. Instead, it argued in a footnote that the City's declaration "cannot be credited by the Court at this stage of the proceedings," and that "all facts and inferences should be construed in favor of MCI, the non-moving party"—not the standard applicable to a Rule 12(b)(1) motion. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983) (" '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluat-

ing for itself the merits of jurisdictional claims.' ") (quoting *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733 (9th Cir.1979)).

The district court did not err in relying upon facts beyond the four corners of the complaint in deciding the question of subject matter jurisdiction under the TIA. The district court correctly concluded that MCI's challenge to Ordinance No. 20083's fee provisions runs afoul of the jurisdictional constraints imposed upon federal courts by the TIA, and we affirm its dismissal of MCI's complaint to that extent.

■ 3. We disagree with the district court's conclusion that MCI's challenges to the "non-fee" provisions of Ordinance No. 20083 were so inextricably intertwined with its challenge to the fee provisions that they were incapable of separate consideration and determination by a federal court consistent with the TIA.

In its complaint, MCI challenged the requirements that telecommunications providers register with the City and obtain City licenses for each qualifying project, subject to the City's authority to deny or revoke such a license at its discretion, alleging that these requirements impermissibly burden telecommunications services and thus are preempted by 47 U.S.C. § 253(a). The district court concluded that MCI's claims centered around the ordinance's fee provisions and that MCI's "few other allegations are so entwined with the challenges to the fees themselves that they cannot be practically separated into distinct claims for relief." Given the fact that the state courts would have jurisdic-

tion to resolve all of MCI's claims, the district court dismissed MCI's "non-fee" claims in the name of judicial economy and avoiding piecemeal litigation.

Lending at least some support to the district court's conclusion is MCI's own assertion—pleaded on the face of its complaint—that the provisions of Ordinance No. 20083 are non-severable, and thus a successful challenge to one provision of the ordinance would effectively invalidate the entire ordinance.[7] If MCI is correct, its challenges to the "non-fee" provisions of Ordinance No. 20083 could ultimately invalidate the remainder of the ordinance, including the fee provisions over which the district court determined it lacked jurisdiction under the TIA.

Upon review, it appears that at least some of MCI's "non-fee" claims address specific provisions of Ordinance No. 20083 that may be severable from the remainder of the ordinance without affecting its general functionality. For example, MCI challenges a provision of Ordinance No. 20083 that empowers the City to require licensees to build excess capacity into facilities they seek to construct within the city (§ 7.302(4)), obligating a telecommunications provider to construct larger—and more costly—facilities than it really needs or will actually use, all at its own expense. It is conceivable that this provision could be preempted and severed from the balance of the ordinance, leaving a generally functional telecommunications registration and licensing ordinance still in place—one that likely would have been adopted even

---

7. In *Qwest Commc'ns, Inc. v. City of Berkeley*, 433 F.3d 1253 (9th Cir.2006) (overruled on other grounds by *Sprint Telephony PCS, LP v. County of San Diego*, 543 F.3d 571 (9th Cir. 2008) (en banc)), this court concluded that the fee exemption provisions of a municipal telecommunications ordinance were preempted by § 253(a), and were not severable from

the remainder of the ordinance—thus invalidating the entire ordinance—notwithstanding the ordinance's severability clause: "it does not appear that the invalid portions of the ordinance can be severed from the valid provisions of the ordinance without affecting the general functionality of the ordinance." *Id.* at 1259.

without the challenged excess capacity provision.

At least to the extent that they challenge provisions of Ordinance No. 20083 that are independent of, and may be severable from, the fee provisions of that ordinance, MCI's "non-fee" claims are not "inextricably intertwined" with MCI's challenges to the fee provisions, and should not have been dismissed on that basis.

This matter must be remanded to the district court for further consideration of MCI's "non-fee" claims in light of Oregon's severability rules.[8] *See, e.g.,* Or.Rev.Stat. § 174.040 (codifying judicially created rule regarding the severability of statutes).

For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART, AND VACATED AND REMANDED IN PART. Each party shall bear its own costs on appeal.

RAWLINSON, Circuit Judge, concurring:

I concur in the result.

---

8. Severability of a local ordinance is a question of state law. *See City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 556–57 (9th Cir.2004) (as amended).

